**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 08-14024-CR-GRAHAM/LYNCH**

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**

**ALBERT LEE RIGGINS,**

     **Defendant.**

_____/

FILED by ____ D.C.

AUG 2 9 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [D.E. #32]**

**THIS CAUSE** having come on to be heard upon the Defendant's Motion To Suppress Statements [D.E. #32] and this Court having reviewed the motion, the government's response and the Defendant's supplemental memorandum in support of his motion, and this Court having conducted an evidentiary hearing on August 27, 2008, at which time evidence, testimony and arguments of counsel were received, this Court recommends to the District Court as follows:

     1.     The motion seeks to suppress post-arrest statements made by the Defendant to law enforcement. The motion alleges that after being advised of his <u>Miranda</u> rights, the Defendant indicated that he did not wish to speak with law enforcement. The Defendant's motion goes on to suggest that Detective Kim continued the interrogation of the Defendant in spite of the Defendant's indication that he did not want to speak with the officer and was invoking his constitutional rights to do so.

     2.     The only witness called at this hearing was Detective Kim of the Port St. Lucie Police Department. Detective Kim was called by the government as a witness. He has been with the Port St. Lucie Police Department for three years. During the time period in question in this case, he was a part of the Special Investigations Unit dealing with narcotics. Detective Kim identified the Defendant in court as the individual who he arrested and who he spoke with after the arrest.

3.    The pertinent issues in this case arise after the Defendant's arrest. Therefore, this Court is not going to go into the circumstances which led up to the Defendant's arrest.   The motion before the Court deals strictly with the post-arrest statement that the Defendant may have made.

4.    The Defendant was arrested on February 2, 2008 in the early morning hours at his residence. This arrest occurred pursuant to execution of a State search warrant at approximately 2:00 a.m. Detective Kim, along with five other officers from his department and three to four other officers from the St. Lucie County Sheriff's Office, made a forced entry into the residence after knocking. Detective Kim could not recall specifically how long the officers waited after knocking before they used a "ramming device" to gain entry. When they entered the residence there were no lights on and the Defendant and his family were sleeping.

5.    The Defendant was taken into custody by officers at the home.   The Defendant was dressed in just a pair of boxer shorts at the time. His wife and children were present as well. The Defendant and his family were brought into the living room area of the residence while the house was searched.   After narcotics were found in the residence, the Defendant was arrested.

6.    Detective Kim estimates that the interview with the Defendant took place ten to fifteen minutes after entry into the home.  Apparently, the Defendant's wife was interviewed first.  She was taken from the living room area into one of the bedrooms and questioned for three to five minutes. After the interview with the Defendant's wife was concluded, the Defendant was then brought into one of the bedrooms and questioned by law enforcement. This advice of rights and subsequent questioning are the subject of the instant motion.

2

7. Detective Kim testified that he had a recording device around his neck which clearly allowed the Defendant to see that he would be recording any statements made. However, Detective Kim advised the Defendant of his Miranda rights before turning on the recording device. Detective Kim testified that he read the Defendant his Miranda rights from a card. He produced that card at the hearing and read the same rights and waiver questions into the record as he read to the Defendant on the night in question.

8. Government's Exhibit No. 1 admitted into evidence at this hearing is a compact disc (CD) containing the conversation between Detective Kim and the Defendant from the point after the Defendant was advised of his Miranda rights until the recorder was turned off. It will be referred to herein as "Compact disc" or "CD." Government's Exhibit No. 2 admitted into evidence at the hearing is a transcript of that CD. It will be referred to as "transcript" herein. This Court will address both of these items of evidence later herein.

9. After reading the Defendant his Miranda rights, Detective Kim asked him if he understood his rights. The Defendant said that he did. This Court will address its findings from listening to the CD and reading the transcript later herein.

10. Detective Kim testified that after the Defendant acknowledged that he understood his rights, Detective Kim asked the Defendant if he wished to speak with him. In response to that question, the Defendant said, "No, not really." Detective Kim testified that he felt that was an equivocal answer since the Defendant was saying "not really." Detective Kim testified that in order to clarify that response he asked the Defendant, "No, you don't want to speak to me right now, not at all? Not at all." Detective Kim testified that in response to that question, the Defendant purportedly said, "Well, what can I do to help myself?"

11. It is noted by this Court that after listening to the CD, the statement by the Defendant contained on the transcript at line 29 where the Defendant purportedly says,

3

"Well, what can I do to help myself?" in response to Detective Kim is not clearly audible to this Court. In listening to the CD both at the hearing and after the hearing, there is a rustling and a noise made around the recorder which clearly blocks out the Defendant's response to Detective Kim's question concerning clarification. Detective Kim testified that this noise was Detective Kim reaching to turn the recorder off. He then stopped and did not turn the recorder off because he testified the Defendant's response was "Well, what can I do to help myself?".

12.     Detective Kim testified that since the Defendant was then asking what he could do to help himself, he felt this was further equivocation on the Defendant's part. Detective Kim testified and this Court hears on the CD, Detective Kim saying that he would explain the situation to the Defendant and says "Then if you still don't want to speak to me, that's fine. I'll leave and we'll go from here. Okay?" In response, the Defendant is heard on the CD to say, "Okay." Detective Kim testified and the CD reflects that he then goes on to tell the Defendant that his wife told the officers that the Defendant was selling crack and that Detective Kim believed that he had enough probable cause to take both the Defendant and his wife into custody for sale and delivery of crack cocaine. The Defendant acknowledges this by saying, "Okay."

13.     Next, Detective Kim testified and is heard on the CD responding to the Defendant that in order to help out his situation the Defendant needed to be truthful if the Defendant chose to speak to him. Detective Kim then testified and is heard on the CD saying "With that in mind, would you like to speak with me?" In response to this, the Defendant is heard on the CD simply making a noise which is listed in the transcript as "Hmm?"

14.     Detective Kim testified and is heard on the CD then asking the Defendant "Would you like to? You still don't want to speak to me?" In response to this question, the

4

Defendant is heard on the CD saying "I just want to know how can I get out of the situation." This is important because this Court clearly hears the Defendant say this as reflected at line 44 of the transcript. This would corroborate the testimony of Detective Kim that the Defendant stated at line 29 of Government's Exhibit No. 2, "Well, what can I do to help myself?" While this Court could not hear the response from the Defendant as contained in line 29 of the transcript (Government's Exhibit No. 2), this clearly audible response from the Defendant at line 44 of the same transcript just seconds after line 29, would seem to be consistent with the Defendant having made that statement which is contained at line 29 of the transcript.

15.     Nevertheless, even if there was not a CD and a transcript, Detective Kim testified that this is what he believed the Defendant said concerning his equivocal answer of how he could help himself, as contained on line 29 of the transcript. This Court considers that testimony together with all other evidence introduced at the hearing. There is no other evidence to contradict the recollection of Detective Kim concerning the statement made by the Defendant as reflected at line 29 of the transcript even though this Court cannot audibly hear that specific response because of the rustling of the recorder.

16.     After the Defendant asked what he could do to get out of the situation as reflected in line 29 of the transcript, Detective Kim is heard on the CD telling the Defendant that before they could continue Detective Kim needed to know if the Defendant wanted to speak to him, "...yes or no." Detective Kim  at this point reminded the Defendant that if at any time the Defendant wanted to stop answering questions until he could have his attorney or legal counsel present, that the Defendant had the right to stop. The Defendant is heard in response at line 50 of the transcript saying, "Okay."

17.     Detective Kim then immediately asks the Defendant again "Okay? So with your complete rights in mind, do you want to talk to me now?" The Defendant is then

5

heard making what this Court considers another equivocal answer by saying "If you want to, I mean ah..."

18.     Detective Kim does not go right into questioning the Defendant but says "Albert, Albert." In response, the Defendant is heard on the CD saying, "I'll speak to you." Subsequent thereto there is conversation between Detective Kim and the Defendant confirming that the lady in the house was the Defendant's wife and Detective Kim saying that having his wife and children around narcotics was not a good situation. The recording then stops.

19.     Detective Kim testified at the hearing that he stopped the recording because of the Defendant's head gestures and other body movements which Detective Kim interpreted to mean that the Defendant wanted the recording device turned off before he would give any more specific information about selling crack cocaine. Detective Kim testified that after the recorder was turned off the Defendant admitted selling crack cocaine for the past several months to support his family and that he had made several sales of crack cocaine earlier that night. He also admitted to Detective Kim that the crack cocaine seized that evening at the residence was his.

20.     On cross-examination, Mr. Birch as counsel for the Defendant meticulously went through the reports and arrest affidavits completed by Detective Kim. These reports appear to be extremely short and no running narrative concerning any of the facts underlying the arrest, advice of Miranda, or statements from the Defendant are contained in any of the reports. The arrest affidavit merely states that the Defendant was arrested in the early morning hours at approximately 3:15 a.m. after entry into the Defendant's residence. Detective Kim did not recall at what time they exactly arrived at the home. The time period in the arrest affidavit was probably the time that he prepared the affidavit according to Detective Kim's testimony.

6

21.    On further cross-examination, Detective Kim testified that he felt the Defendant's original response to him after advising the Defendant of his <u>Miranda</u> rights was equivocal.  Detective Kim testified that the Defendant's statement found at line 27 of the transcript wherein the Defendant is heard to say "No, not really" was an equivocal answer which he felt needed to be clarified.

22.    Detective Kim also testified on re-direct examination that during the interview with the Defendant in the bedroom, Detective Kim was alone.  Detective Kim was standing approximately five to seven feet from the Defendant during the interview and the Defendant was clothed only in his boxer shorts.  Detective Kim also testified on re-direct that everything that he heard from the Defendant could clearly be picked up by the recorder at such close distance.  Detective Kim testified that he clearly heard the Defendant's response contained at line 29 of the transcript wherein the Defendant purportedly says, "Well, what can I do to help myself?"  This is not audible to the Court due to the rustling of the tape recorder.  This does not necessarily contradict Detective Kim's testimony since the rustling of the tape recorder would not have impaired Detective Kim's hearing at the time of the interview.

23.    This Court asked several questions as well concerning the environment where the Defendant was questioned since the Court must make a determination that the environment and totality of the circumstances under which the Defendant was advised of his rights and how he was questioned did not violate his constitutional rights.  In response to the Court's questions, Detective Kim testified that the Defendant was sitting on his bed handcuffed in his boxer shorts during the entire interview.  Detective Kim testified that the interview took probably ten minutes in total time.  At no time did the Defendant ever say that he wanted to stop speaking with Detective Kim, even after the recorder was turned off.  The Defendant made no requests for food or drink.  The lights were on in the bedroom

7

during the interview. The temperature in the home was normal even though it was February. There were no problems with the Defendant's wife or children in the other room which may have distracted or diverted the Defendant's attention during the interview.

24. The Defendant presented no witnesses or evidence at the evidentiary hearing.

## ANALYSIS

25. The Defendant does not challenge the sufficiency of the Miranda warnings. The motion challenges the continued questioning by Detective Kim after the Defendant purportedly invoked his right to remain silent. In determining the voluntariness of the confession, the Court must look to the totality of the circumstances in assessing whether the police conduct was causally related to the ultimate statement which the Defendant purportedly made. There is no evidence to suggest any coercion, threats, violence, deprivation of food, sleep, nor was there an exhaustive interrogation. United States v. Thompson, 422 F.3d 1285 (11th Cir. 2005) and United States v. Rush, 144 Fed. Appx. 13 (11th Cir. 2005).

26. There is also no allegation of deception by law enforcement in this matter. The fact that the Defendant may have believed that any cooperation would inure to his benefit and be passed along to the prosecuting authorities does not otherwise make his statement involuntary. See United States v. Chealy, 185 Fed. Appx. 928 (11th Cir. 2006). Likewise, the fact that Detective Kim stated to the Defendant that he believed there was sufficient probable cause to arrest both the Defendant and his wife for sale of crack cocaine does not constitute coercion. Under the circumstances in this case, Detective Kim, after speaking with the Defendant's wife and the Defendant, had sufficient probable cause to believe that either or both of those individuals could be subject to arrest involving the narcotics found in their residence. To make such a statement concerning that probable

8

cause is not deemed by this Court to be coercive. United States v. Estelan, 156 Fed. Appx. 185 (11th Cir. 2005).

27.     This Court next looks to whether or not the Defendant's remarks at line 27 of the transcript, which is audible on the CD constituted an unequivocal and unambiguous desire to invoke his constitutional rights. At that point in the taped conversation on line 27 of the transcript, the Defendant says in response to whether or not he wishes to speak with Detective Kim, "No, not really." It appears on its face to be equivocal to this Court. For example, in Davis v. United States, 512 U.S. 452 (1994), the United States Supreme Court held that a defendant's statement that "maybe I should talk to a lawyer" was not a specific request for counsel. The Court went on to hold that the agents interrogating the suspect were not required to stop questioning the suspect and that it was entirely proper for them to clarify whether in fact he wanted a lawyer.

28.     The inquiry as to the ambiguity of any alleged statement invoking a defendant's right to remain silent is an objective standard. The salient question in such a review is did the defendant articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in those circumstances would understand the statement to be an assertion of the right to remain silent. United States v. Del Rio, 168 Fed. Appx. 923 (11th Cir. 2006). In Del Rio, when the defendant was asked whether he would be willing to cooperate with the government, the defendant replied "I'm no snitch" and then said "I do not believe in providing information regarding other individuals." The Court held that a reasonable law enforcement officer could have interpreted these statements to mean that the defendant was willing to cooperate in respect to his own arrest but not to implicate others. The Court found that such a statement was not an unequivocal and unambiguous invocation of his right to remain silent.

9

29.     If the defendant's statement is ambiguous or equivocal, the police do not even have a duty to clarify the suspect's intent. United States v. Mikell, 102 F.3d 470 (11th Cir. 1996). While it may be better practice to attempt to clarify, as Detective Kim did, there is no hard and fast rule that clarification is required before the questioning proceeds. Such matters are determined on a case-by-case analysis. See Medina v. Singletary, 59 F.3d 1095 (11th Cir. 1995).

30.     In this instance, Detective Kim did not just forge ahead, ignore the Defendant and continue questioning. Rather, Detective Kim stopped and tried to clarify what the Defendant meant by "No, not really." Once he did so, Detective Kim testified that the Defendant, at line 29 of the transcript, Government's Exhibit No. 2, told him "Well, what can I do to help myself?".

31.     As stated by this Court previously, this is the only portion of the CD which is inaudible to this Court. Detective Kim was touching the recorder and getting ready to turn it off when he was asking the question to clarify the Defendant's response. This is a logical explanation as to why that particular response of the Defendant is inaudible. Additionally, as this Court pointed out previously, the Defendant's response which is found in the transcript at line 44 seems to reiterate the fact that the Defendant just wants to know how he can get out of that situation in which he found himself. The fact that the response at line 29 is inaudible does not contradict the sworn testimony of Detective Kim at the evidentiary hearing. His recollection of what he heard and the Defendant's response in that regard is uncontroverted in the record.

32.     Instead of simply ignoring the Defendant and plodding ahead with questioning of the Defendant concerning the narcotics offense, Detective Kim appears to have been scrupulously attempting to clarify the Defendant's response as to whether or not he "really" did or did not want to speak further with Detective Kim. In furtherance of that

10

objective, as recited by this Court previously herein, Detective Kim told the Defendant beginning on line 30 of the transcript that if the Defendant did not want to speak with him, that was fine with Detective Kim.

33.     This Court finds that the initial response by the Defendant found at line 27 of the transcript where the Defendant is responding to Detective Kim by saying "No, not really" was an ambiguous and equivocal response. Further, this Court finds that Detective Kim's brief attempt to clarify the Defendant's response was legitimate and justified under the totality of the circumstances. Once the Defendant's response was clarified, it is clear by listening to the CD  and regarding the transcript that the Defendant's interests concerned how he could get out of the situation. After that was explained to the Defendant as is heard on the CD and related in the transcript, the Defendant unequivocally said at line 54 of the transcript, "I'll speak to you."

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion To Suppress Statements [D.E. #32] be **DENIED** and that any post-arrest statements made by the Defendant to Detective Kim which served as the subject of this motion be admissible at trial.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, United States District Judge assigned to this case.

**DONE AND SUBMITTED** this  29th  day of August, 2008, at Ft. Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

11

cc:
Hon. Donald L. Graham
AUSA Rinku Talwar
AFPD Peter Birch